UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                                                  Chapter 13

Donyell Nicholson and                                       Case Number 17-47542
Kernita L. Nicholson,
    Debtors.                                              Hon. Mark A. Randon

_____/

**OPINION AND ORDER REGARDING
THE CHAPTER 13 TRUSTEE'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Donyell and Kernita Nicholson are above-median income debtors, required to make 60 monthly payments under their plan. This district's model plan requires the clock to start on their five-year commitment period on the date of confirmation–i.e., March 30, 2018. After confirmation and expiration of the plan, Debtors seek credit for $7,300 in pre-confirmation payments to be applied against the $22,000 they owe from profit sharing and bonus income. If allowed, Debtors would only be obligated to pay an additional $10,486.19 to obtain a discharge instead of $18,932. The Trustee seeks dismissal for failure to complete the plan.

Because Debtors did not seek to modify the start date of the applicable commitment period pre-confirmation, on or before June 30, 2023, they must pay an additional $18,392 to the Trustee for their case to proceed to discharge. Otherwise, Debtors' case will be dismissed.

**II.   BACKGROUND**

Debtors filed Chapter 13 bankruptcy on May 17, 2017. Their amended plan contains the following language: "Debtor's Plan Length shall be 60 months *from the date of entry of the Order Confirming Plan*." (Emphasis added). Debtors did not seek to modify this language pre-

confirmation (*see e.g.*, *In re Kinne*, *infra*), and the amended plan was confirmed on March 30, 2018. Three years later, the Trustee sought to dismiss Debtors' case for failure to make plan payments. The parties subsequently agreed to excuse Debtors' delinquency in the amount of $11,256.

By its terms, Debtors' plan expired on March 30, 2023. The Trustee seeks dismissal for failure to complete the plan: Debtors did not remit approximately $22,000 in profit sharing and bonus checks. The Court previously ruled that Debtors would have until June 30, 2023, to satisfy all outstanding payments and receive a discharge.

Debtors' position is that the total amount due under the plan from confirmation to expiration was approximately $86,000. Adding the $22,000 in missing payments, the total owed to complete the plan is approximately $108,000. Because they have already paid approximately $98,000 into the plan, the balance owed to complete the plan and obtain a discharge is $10,486.19.

The Trustee's position is that of the approximate $98,000 that was paid into the plan, the Court must deduct $7,300 in pre-confirmation payments. Accordingly, Debtors owe $18,932 to complete the plan and obtain a discharge.

### III. APPLICABLE LAW AND ANALYSIS

The bankruptcy code requires Debtors to apply "all of [their] projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan . . . to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Debtors' applicable commitment period is five years. 11 U.S.C. § 1322(d)(1). And, under the bankruptcy code, the first payment was due on June 16, 2017. 11 U.S.C. §

-2-

17-47542-mar    Doc 169    Filed 06/07/23    Entered 06/07/23 16:26:04    Page 2 of 4

1326(a)(1) ("Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier[.]"). Therefore, as this Court has ruled, under the plain language of the statute, Debtors' plan would have expired a year ago–on June 16, 2022. However, this district's model plan states that the applicable commitment period begins on the date the plan is confirmed. Under our model plan, the commitment period began on March 30, 2018, and expired two months ago–on March 30, 2023.

Debtors want it both ways: a longer plan period *and* credit for all pre-confirmation payments. "This [they] cannot do. Debtor[s] must elect when [their] applicable commitment period begins to run." *In re Batoha*, No. 21-31487, 2022 WL 1310943, at *2 (Bankr. E.D. Mich. May 2, 2022). By not seeking to amend the model plan pre-confirmation, Debtors elected their applicable commitment period to run from the confirmation date. *See* 11 U.S.C. § 1327 (the debtor is bound by the provisions of the confirmed plan). In this scenario, "pre-confirmation payments are additive to the amount paid by a debtor during the applicable commitment period." *Id.*

This Court acknowledges that it has previously required adherence to the plain language of the bankruptcy code and started the commitment period 30 days after the petition date. *In re Kinne*, No. 19-49692, 2020 WL 5505912 (Bankr. E.D. Mich. Sept. 11, 2020). However, *In re Kinne* is inapplicable here. *Kinne* was limited to the specific facts in which the request to change the language of the model plan (i.e., the start date of the commitment period) was made pre-confirmation. As *Kinne* discussed, the model plan commitment period may be beneficial to

many debtors given their specific circumstances. But the election must be made before confirmation–not after.

IV. **CONCLUSION**

Debtors' applicable commitment period began on March 30, 2018. As such, Debtors cannot obtain credit for the pre-confirmation plan payments. The Trustee must receive $18,932 from the Debtors on or before *June 30, 2023*, in order to receive a discharge. Failure to do so will result in the dismissal of Debtors' case.

**IT IS ORDERED**.

**Signed on June 7, 2023**

/s/ Mark A. Randon
**Mark A. Randon**
**United States Bankruptcy Judge**